151 N.J. Super. 27 (1977)
376 A.2d 541
MOUNT LAUREL TOWNSHIP, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
MARIO J. BARBIERI AND ELIZABETH BARBIERI, HIS WIFE, ET AL., DEFENDANTS-RESPONDENTS, AND MARIO J. BARBIERI AND ELIZABETH BARBIERI, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
A. LOUIS GOLDBERG AND RITA GOLDBERG, HIS WIFE, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1977.
Decided June 7, 1977.
*29 Before Judges CARTON, KOLE and LARNER.
Mr. John W. Trimble argued the cause for appellant Mount Laurel Township (Messrs. Higgins, Trimble & Master, attorneys).
Mr. Ralph J. Kmiec argued the cause for respondents Barbieri, Goldberg and Kanigowski (Mr. Ralph J. Kmiec, attorney for respondents Kanigowski; Mr. George H. Barbour, attorney for respondents Barbieri; Mr. Clyde V. Creato, attorney for respondents Goldberg).
Mr. Neil F. Deighan, Jr. argued the cause for respondents Marmer & Kapel, Inc. and Donald A. Kapel (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
Mr. James R. Bodnar argued the cause for respondent Cohen, Casel, Gerbarg & Logan, a partnership (Mr. James Logan, Jr., attorney).
The opinion of the court was delivered by CARTON, P.J.A.D.
The tangled litigation which produced the present appeals stems from the action of the Mount Laurel Township Planning Board in August 1973, approving, subject to certain conditions, subdivision of a 29-acre tract of land.
Two separate actions in the Chancery Division are involved. The first is an action brought in November 1974 *30 by Mario and Elizabeth Barbieri against A. Louis and Rita Goldberg and Tadeusz and Helen Kanigowski for partition of the tract which was the subject of the subdivision proceeding. This action resulted in a consent judgment physically partitioning the property among the parties. The township made application to the trial judge to vacate the judgment, which the judge denied. The Township has appealed that action.
The second action is an independent suit brought by the township as plaintiff, seeking to set aside the partition judgment, to restrain the three couples from selling their property to third parties, and to require them to apply to the appropriate township authorities for subdivision approval. The judge dismissed this action and the township also appeals that determination. This court ordered consolidation of both appeals.
A detailed statement of the factual background of the various legal proceedings is necessary to place the relatively narrow issue in proper focus. The pertinent facts are essentially undisputed.
Plaintiff Mount Laurel Township is a township in Burlington County in which the approximately 29-acre tract of land in question is located. Defendant Cohen, Casel, Gerbarg & Logan ("Cohen," "partnership") is a partnership and the original owner of the tract, which fronts on Elbo Lane and is identified on the township tax map as Block 283, Lot 21. Defendants Marmer & Kapel, Inc. ("M & K") and Donald Kapel ("Kapel") are licensed real estate brokers in Moorestown, New Jersey, who were retained by the partnership to sell the property. Defendants Barbieri, Goldberg and Kanigowski ("defendants," "three couples") are the former contract purchasers and present owners of the tract.
In late 1972 defendants began negotiations with the partnership to purchase the property through M & K. The Kanigowskis wished to buy 14 acres of the property, the Goldbergs wanted approximately 8 acres, and the Barbieris wanted the remaining 6 acres. Each couple intended to construct *31 a single-family residence on its share of the land. The Kanigowskis also planned to cultivate flowers on their portion for use in their retail florist business, while the Barbieris and the Goldbergs proposed to raise and maintain horses for their personal use on their lots.
Pursuant to these negotiations Kapel, acting as representative of the partnership, applied to the township planning board in January 1973 for "minor" subdivision approval for the Elbo Lane parcel. Kapel indicated in the application that no new streets would be created by the subdivision and that the subdivision would "not change the nature of the neighborhood" or the topography of the land. Kapel also indicated that the proposed sale of two of the three lots to be created by the subdivision was scheduled for closing on April 1, 1973. Because Elbo Lane is a county road, Kapel also sought approval of the subdivision from the Burlington County Planning Board.
In succeeding conferences and correspondence with the township solicitor, Kapel explained that the three couples did not intend to further subdivide the parcel and that they wished to retain the farm-like atmosphere of the area. Kapel expressed the hope that the planning board would waive a number of requirements normally imposed upon "major" subdivisions under the township zoning ordinance, particularly that which would require the three couples to install sidewalks, curbs and gutters along the 1,200-foot frontage of the parcel on Elbo Lane. The solicitor responded that any waiver of the requirements could occur only after a public hearing.
In mid-February the county planning board approved the proposed subdivision, with the requirement that the three couples dedicate an 18-foot strip of their land to fulfill the minimum right-of-way required for county roads such as Elbo Lane. At the time Kapel was replaced by another representative, and the minor subdivision application to the township planning board was withdrawn. In March the three couples submitted an application requesting major subdivision approval *32 for the division of the parcel. This application was discussed by the township planning board at a public hearing in mid-June and considered throughout July. While the application was under study the partnership conveyed title to the three couples by deed dated June 29, 1973. This deed was duly recorded on July 12.
On August 9, 1973 the planning board passed a resolution approving the proposed major subdivision and granted plaintiffs' request that the usual improvements required for major subdivisions be waived, provided that the three couples maintain the proposed single-family residence/small farm development scheme. However, the board found that the parcel had been the subject of flooding in the past and that the three couples' plan to use the existing pond on the land for irrigation purposes would not alleviate the problem. Therefore, the planning board imposed a number of conditions on the proposed subdivision, including a 200-foot setback and 100-foot sideyard limitation, and a requirement that the three couples enlarge the pond 1 1/2 times or adopt any alternative measure to abate the flooding approved by the township engineer. The three couples applied to the Planning Board for reconsideration of these requirements in May 1974, but were denied relief.
Without prior notice to the township, one of the couples, Mario and Elizabeth Barbieri, filed suit in the Chancery Division against the other two couples seeking to partition the Elbo Lane parcel. The Barbieris' unverified complaint failed to recite the factual and legal basis for a partition, or the size and configuration of the lots to be created by such a partition judgment. In January 1975 the three couples executed a consent judgment partitioning the property into three lots of exactly the size and configuration conditionally permitted by the subdivision resolution. Despite the parties' failure to submit affidavits presenting facts justifying a partition, and despite the lack of an evidentiary hearing, the trial judge entered this judgment on January 28, 1975. When this judgment was duly recorded in the Burlington County Clerk's *33 office, the clerk forwarded a recorded copy to the township engineer for the appropriate revision of the township tax map. This was the first notice the township received of the partition procedure.
On June 12, 1975 the township filed suit against the three couples, the partnership and M & K, seeking to set aside the partition judgment as fraudulently procured. Defendants Barbieri and Kanigowski denied the substantive allegations of the complaint and counterclaimed for invalidation of the zoning restrictions imposed upon defendants' land by the planning board, as well as for a declaration that the township's zoning ordinance was unconstitutional on its face and as applied to defendants' property. The partnership and M & K also denied the township's fraud allegations, and M & K cross-claimed against the three couples for indemnification. The record is unclear as to whether the Goldbergs answered the complaint.
In July 1975 the partnership and M & K moved to dismiss the complaint for failure to state a claim upon which relief may be granted. The trial judge found that the partnership had conveyed the parcel to the three couples prior to the approval of the subdivision application and to institution of the partition suit, and consequently did not retain any property interest at the time of the alleged fraud. The judge also found that M & K was involved in the application to the planning board and the transfer of the parcel to the three couples only as real estate broker, and that at no time did it retain a property interest in the land. He therefore dismissed the complaint as to both the partnership and M & K, essentially because neither had held interests in the parcel or participated in the allegedly fraudulent partition suit.
The trial judge then considered the sufficiency of the complaint's allegation that the three couples had fraudulently transferred the property through the vehicle of the partition suit in order to evade the township's subdivision ordinance and the conditions imposed by the planning board's subdivision resolution. Noting that the township argued that extensive *34 discovery would be required to establish whether fraud had, in fact, occurred, the judge concluded that the township's allegations were "speculative" and unsupported by the pleadings and affidavits filed by the parties. He observed that the township was really seeking to vacate the partition judgment, and that "elementary" procedure under R. 4:50-1 required that the applicant seek such relief from the trial judge who entered the judgment. Because the township had not adequately alleged fraud, the judge rejected its argument that collateral attack on the partition judgment was proper.
The trial judge then considered defendants' argument that the subdivision in question was exempt from the subdivision statute, N.J.S.A. 40:55-1.14,[1] and hence beyond the jurisdiction of the Township's Planning Board. Relying upon N.J.S.A. 40:55-1.2,[2] which exempts from the definition of "subdivision" divisions of land used for agricultural purposes where the resulting parcels are each three acres or more in size, and divisions of property upon court order, the judge reasoned that the subdivision was exempt from the statutory requirements because the subdivided lots were larger than three acres and were to be used for agricultural purposes, and because the subdivision was accomplished by a valid partition judgment. On this basis, and on the theory that the complaint was an impermissible collateral attack on another judgment, the judge dismissed the complaint in November 1975.
*35 In mid-January 1976 the township filed a motion to vacate the partition judgment in the Chancery Division on the ground that it was fraudulently procured. The judge there noted that the regular procedure by which applicants for a subdivision challenge the planning board's adverse decision is to bring suit in the Law Division in lieu of prerogative writ, and that the three couples' partition suit was an unusual procedure. After reviewing the earlier proceedings before him, particularly the lack of a hearing and the consent form of the partition judgment, the judge rejected the township's allegations of fraud, finding that "the partition action and the consent judgment * * * was [sic] motivated by a sincere conviction of the parties that this subdivision was in fact exempt from the ordinances propounded and promulgated by the Township."
The trial judge then reviewed the substance of the proceedings on the township's prior complaint. He reasoned that while hindsight might suggest that he should have required the intervention of the township in the partition suit, he was satisfied that the arguments which the township would have presented to him had he so ordered were in fact presented to Judge Wood. Characterizing the proceedings on the township's complaint as having "all of the trappings of a prerogative writ [suit] except for the label * * *," the judge found that the hearing and decision on that complaint entailed consideration and resolution of all the issues which might have been presented and decided in a properly brought prerogative writ action. He therefore denied the township's motion to vacate the partition judgment.
A review of the records in both appeals makes it clear that this partition proceeding was designed and pursued by the three couples solely to circumvent the subdivision statute and the allegedly onerous conditions imposed upon the proposed subdivision of the three couples' property by the township's resolution. The partnership and the three couples resorted initially to the procedures sanctioned by the township's subdivision ordinance and the state statute. Only *36 after they received a conditional subdivision approval which was not to their liking did they commence the partition action. The partition complaint was unverified. The judgment ordering physical partition was entered without benefit of a hearing and was totally unsupported by any evidence, in either affidavit or testimonial form, which would justify such a partition. The final order was drafted with the consent of all the couples and divided the property in exactly the manner sought in the subdivision application.
Yet, the couples argue that, despite the hollow foundation for the judgment, and their intention in seeking it, this partition judgment was nevertheless an exempt court-ordered subdivision under the statute. The narrow issue thus presented is whether this consent partition judgment falls within the exemption for court-ordered subdivisions in N.J.S.A. 40:55-1.2 despite the parties' obvious motivation for seeking that "court order."
Although there is no reported decision directly on point, this court reviewed a similar situation in Popular Refreshments, Inc. v. Fuller's Milk Bar, etc., 85 N.J. Super. 528 (App. Div. 1964), certif. den. 44 N.J. 409 (1965). Plaintiff there was the lessee of a portion of a larger tract of land owned by defendant, and the holder of a purchase option on the leased property. After plaintiff exercised the purchase option defendant unsuccessfully sought municipal approval for subdivision of the property. In the face of the municipality's refusal to approve the subdivision defendant refused to convey the property, plaintiff sued for specific performance and the municipality intervened. 85 N.J. Super. at 533-534. Plaintiff argued that the subdivision approval was not a condition precedent to the conveyance because N.J.S.A. 40:55-1.2 exempted court-ordered subdivisions from the subdivision statute. 85 N.J. Super. at 540. Plaintiff reasoned that if the court ordered specific performance of the contract to convey, an exempt subdivision "upon court order" would result. Id.
*37 The Appellate Division rejected this circular argument, holding that specific performance could not be ordered because the approval of the subdivision by the municipality was an implied condition precedent to the lessor's duty to convey. Concerning the scope of the "court order" exemption, the court observed that "[w]e are satisfied that it was not the legislative intent that the policy of requiring municipal approval of land subdivisions, in the furtherance of municipal planning, could be rendered nugatory by a simple resort to a specific performance action in lieu of adhering to the established statutory procedure." 85 N.J. Super. at 541. Although the court expressly refused to speculate on the "outer limits" of this statutory exemption, it rejected the mechanical analysis which would concentrate on the label, rather than the circumstances and content, of a court-ordered subdivision, advanced by plaintiff. Id.
The principles established in the Popular Refreshments decision are equally applicable here. The partition judgment was a contrived one  sought and effectuated by the three couples for the sole purpose of avoiding the applicable municipal and state subdivision controls. Had the parties attempted to achieve this objective through direct transfer between themselves and then recorded the deeds, the transactions would have been illegal ones subject to the penalties of N.J.S.A. 40:55-1.23. The instant transfers acquired no greater validity and the transferees acquired no greater rights as against the municipality through the transparent device of having them incorporated in the form of a judicial decree.
A partition decree so motivated and unsupported by any evidential basis cannot be considered an exempt court-ordered subdivision. To hold otherwise would make a mockery of the municipal subdivision statute. In providing for this exception, the Legislature, in our view contemplated court orders, such as condemnation judgments, in which the municipality seeks the subdivision of land for public purposes, and those court-ordered subdivisions which result from truly adversary *38 proceedings between private litigants. Adoption of the three couples' argument here would, in our opinion, frustrate the legislative intent.
Moreover, there was no factual basis in the record for the court below to hold that the property came within the farming subdivision exemption in N.J.S.A. 40:55-1.2.
The first trial judge erred in failing to require the township's intervention, in entering the partition judgment and in denying the township's motion to vacate it. The judge, in the second action erred in failing to consolidate the complaint with the partition proceeding and in failing to mold the combined proceeding into a prerogative writ action. He also erred in dismissing the township's complaint and the three couples' counterclaim, based upon his mistaken view of the statutory exception. However, the judge's dismissal of the portions of the township's complaint directed at the partnership and M & K was proper for the reasons expressed by him.
The order dismissing the township's motion to vacate the partition judgment is reversed, the partition judgment therein vacated, and the complaint in that action dismissed. In view of this determination Mount Laurel's complaint in the second, independent action to vacate the partition judgment is dismissed as moot. However, since additional issues properly the subject of a prerogative writ action are raised in the counterclaim, the judgment is reversed and the matter remanded to the trial judge for resolution of the challenges raised by defendants in the counterclaim to the validity of the conditions imposed by the municipality on the subdivision of the property and their challenge to the constitutionality of the municipal zoning ordinance.
On remand, the judge should promptly conduct a pretrial conference to frame the issues and set an early date for a hearing thereon. We do not retain jurisdiction. The costs in both proceedings up to the present time shall be taxed against the Barbieris, the Goldbergs and the Kanigowskis.
NOTES
[1] This provision, and all other statutory sections relevant to this appeal, were repealed by the Municipal Land Use Law, L. 1975, c. 291, § 1 et seq., N.J.S.A. 40:55-D-1 et seq. However, this revision did not take effect until August 1, 1976, N.J.S.A. 40:55D-1, and therefore the previous version governs this case.
[2] N.J.S.A. 40:55-1.2 provides that:

* * * the following divisions shall not be considered subdivisions within the meaning of this act: * * * divisions of land for agricultural purposes where the resulting parcels are three acres or larger in size, * * * or divisions of property upon court order.
Cf. N.J.S.A. 40:55D-7 (new version of the "subdivision" definition under the Municipal Land Use Act).